An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-729

Filed 1 July 2026

Polk County, No. 23 CVS 000206-740

HEATHER BOUNDS, Plaintiff,

v.

JOHN VICTOR RUSSELL, Defendant.

Appeal by Defendant from judgment entered 12 February 2025 by Judge Daniel A. Kuehnert in Polk County Superior Court. Heard in the Court of Appeals 12 February 2026.

> *Allen Stahl & Kilbourne, PLLC, by Matthew J. Giangrosso, Christopher G. Lewis, James K. Kilbourne, Jr., & Derek J. Allen, for Plaintiff–Appellee.*

> *Lindsay Law, PLLC, by Stephen P. Lindsay, for Defendant–Appellant.*

PER CURIAM.

John V. Russell (Defendant) appeals a jury verdict finding him liable to Heather Bounds (Plaintiff) for $100,000 each in compensatory and punitive damages plus interest. He argues that the trial court erred (1) by not joining *ex mero motu* a purported "Bounds–Russell Partnership" as a necessary party to Plaintiff's action

and (2) by granting Plaintiff's motion to strike Defendant's supporting affidavit before trial. For the reasons below, this Court affirms the trial court on both counts.

## I.  Background

This is a horse dispute of a different color. On 5 July 2023, Defendant shot a horse during an altercation with his son Lincoln Russell. At some point prior to this altercation, Lincoln and Plaintiff entered into an agreement whereby she would purchase "Harry," a well-bred racehorse, for $70,000 so that Lincoln could train and showcase it on the racing circuit. If the horse successfully sold, Lincoln would receive a 10% commission of its gross proceeds and reimbursement for his documented training fees up to that point. He stored the horse at Defendant's Columbus, N.C. farmhouse in the meantime.

Later on 5 July 2023, Defendant arrived at the farm to find an agitated Lincoln working with the horse. Accounts differ as to the exact chain of events at this point, but Defendant eventually found himself pinned to his car near the horse. His gun discharged in the scuffle, fatally injuring it. Lincoln and Defendant then called a local veterinarian to euthanize the horse to relieve its suffering.

On 31 August 2023, Plaintiff filed a complaint alleging that Defendant converted and negligently killed the horse, and that she suffered emotional distress as a result. She also sought punitive damages. Pretrial discovery ensued, with Defendant responding to depositions and interrogatories with a mix of substantive responses and Fifth Amendment invocations. Plaintiff then moved for summary

judgment based on these discovery materials, to which Defendant then responded with an affidavit he would later characterize at the hearing as an articulation of the "sudden[-]emergency doctrine."

At this 22 July 2024 hearing, Plaintiff orally moved to strike that affidavit and served the motion on Defendant a week later. Although the trial court found enough materially disputed facts to preclude summary judgment, it granted Plaintiff's motion to strike because "Defendant [had] strategically invoked his Fifth Amendment privilege and the shield it provided in response to Plaintiff's discovery requests and the deposition questioning." The dispute proceeded to a full jury trial, which found Defendant liable to Plaintiff for $100,000 each in compensatory and punitive damages resulting from the shooting. Defendant timely appealed this verdict on the aforementioned grounds.

## II.    Jurisdiction

This Court has jurisdiction to hear Defendant's appeal of the trial court's judgment because it is the "final judgment of a superior court."[1] N.C.G.S. § 7A-27(b)(1) (2025).

---

[1]  Defendant also asserts that the trial court lack the subject-matter jurisdiction to preside over the trial in the first instance because the purported "Bounds–Russell Partnership" rendered Lincoln Russell a necessary party to Plaintiff's action. Although he may raise this sort of claim "for the first time on appeal," Plaintiff's "failure to join a necessary party does not result in a lack of" subject-matter jurisdiction per se. *Stancil v. Bruce Stancil Refrig'n, Inc.*, 81 N.C. App. 567, 573–74 (1986) (first citing N.C. R. Civ. P. 12(h)(3); and then citing 5 *Wright & Miller's Federal Practice & Procedure* § 1359 (1st ed. 1969)). Because the "failure to join a party under Rule 19 is not a

### III. Analysis

On appeal, Defendant argues that the trial court erred (1) by failing to join the purported "Bounds–Russell Partnership" to Plaintiff's action before proceeding to trial and (2) by granting Plaintiff's motion to strike his affidavit despite previously "la[ying] down [his F]ifth [A]mendment shield." We review a trial court's initial joinder-propriety assessment only for an abuse of "sound discretion,"[2] *Crosrol Carding Devs., Inc. v. Gunter & Cooke, Inc.*, 12 N.C. App. 448, 451 (1971), but review questions of legal and constitutional magnitude *de novo*, *see Herndon v. Herndon*, 368 N.C. 826, 829 (2016). Based on these considerations and the reasons below, we disagree with Defendant on both issues and thus affirm the trial court.

### A. Partnership Joinder

First, Defendant argues that his son and Plaintiff formed a "Bounds–Russell Partnership" necessary for this lawsuit to proceed to trial in the first instance. He suggests that this alleged partnership—and not Plaintiff herself—owned the racehorse *de jure*, thus requiring the partnership's procedural joinder to her complaint. But Defendant did not raise it as an issue "at the trial on the merits" at any point whatsoever, N.C. R. Civ. P. 12(h)(2), and only "raise[s] the issue for the first

---

jurisdictional matter," we reject this particular claim and instead hold that the trial court had the subject-matter jurisdiction to hear Plaintiff's action. *Id.* (quotation omitted).

[2] By "joinder propriety," we mean only the decision of whether to join a *proper* party to a particular action. We do not contest a trial court's blackletter lack of "discretion as to whether to add a *necessary* party." *Wenninger v. Wenninger*, 293 N.C. App. 791, 795 (emphasis added), *petition for discr'y rev. denied*, 386 N.C. 960 (2024).

time" here, *Stancil v. Bruce Stancil Refrig'n, Inc.*, 81 N.C. App. 567, 574 (1986). We decline to reach the merits of this unpreserved issue and dismiss it as a result. *See* N.C. R. Civ. P. 10(a)(1).

## B. Fifth Amendment Shield

Second, Defendant argues that the trial court erred by striking his pretrial affidavit in response to his previous invocation of the Federal Fifth Amendment right against self-incrimination. We disagree. Defendant mischaracterizes a discretionary ruling on trial evidence as a constitutional claim. He also failed to raise this issue at trial. *See id.*

We review constitutional claims *de novo, see Herndon,* 368 N.C. at 829, but witness-testimony claims only for an abuse of the trial court's "wide latitude of discretion when making a determination about the admissibility of expert testimony," *State v. Bullard*, 312 N.C. 129, 140 (1984) (citing N.C. R. Evid. 702). Under N.C. Evidence Rule 702, a trial court may permit "a witness qualified as an expert . . . [to] testify . . . if all of the following apply":

(1)  The testimony is based upon sufficient facts or data.
(2)  The testimony is the product of reliable principles and methods.
(3)  The witness has applied the principles and methods reliably to the facts of the case.

N.C. R. Evid. 702(a)(1)–(3). If a trial court chooses not to admit purportedly expert testimony, then the challenging party must show that the "ruling [wa]s manifestly

unsupported by reason or [wa]s so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285 (1988).

Defendant fails to meet this high bar here. As the trial court noted in its order granting Plaintiff's motion to strike, "Defendant repeatedly invoked his Fifth Amendment privilege" by "responding to questions with variations of 'I plead the Fifth' throughout [his] deposition." Defendant similarly "plead[ed] the Fifth" "in response to certain discovery requests," which his counsel expressly characterized as a strategic response to "a criminal charge pending" at that time. Even if Defendant had not repeatedly chosen to invoke this right in pre-trial proceedings, he affirmatively conceded in those same pretrial filings that he was "not a certified or licensed equine appraiser." He cannot plausibly reverse this position in an "attempt[ ] to identify him[self] as an expert witness" at a subsequent trial. Based on these considerations, we hold that the trial court did not abuse its discretion in refusing to admit Defendant as an expert witness regarding the horse's valuation.

## IV.   Conclusion

For the reasons above, this Court affirms the trial court's (1) decision to forgo joinder of any purported "Bounds–Russell Partnership" to Plaintiff's action and (2) order granting Plaintiff's motion to strike Defendant's affidavit before trial.

AFFIRMED.

Panel consisting of Judges STROUD, GRIFFIN, and MURRY.

Judge STROUD concurs in result only by separate opinion.

Report per Rule 30(e).

No. COA25-729 – *Bounds v. Russell*

STROUD, Judge, concurring in result only.

For the reasons stated in my separate opinion in *In re: J.R.T.*, I concur only in the result. *See* ___ N.C. App. ___, ___, 928 S.E.2d 532, 2026 WL 1020606 (2026) (Stroud, J., concurring in result) (unpublished).[1] In my view, "no court or party should rely on this unpublished opinion under Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure." *Id.* at *6 (Stroud, J., concurring in result); *see also* N.C. R. App. P. 30(e)(3) ("If a party believes . . . that an unpublished opinion has precedential value to a material issue in the case and that there is no published opinion that would serve as well, the party may cite the unpublished opinion. . . ."). The majority opinion may be misleading in several respects; I mention only one.

To begin, the majority's "Fifth Amendment Shield" section seems instead to concern the exclusion of expert testimony under Rule 26 of the North Carolina Rules of Civil Procedure. *See* N.C. Gen. Stat. § 1A-1, Rule 26 (2025). To be fair, though, Defendant's brief conflates the issues. It focuses mainly on a 7 August 2024 order, entered about a month before trial, that refused to allow a late affidavit Defendant offered in opposition to summary judgment. That order addressed both Defendant's failure to provide proper discovery about a proposed expert witness and his invocation

___

[1] I appreciate the irony of citing another unpublished opinion, but there is no need to repeat my rationale when my separate opinion in *In re J.R.T.* is available for review.

of the Fifth Amendment during discovery, including his refusal to testify about the events on the day of the incident. But the order also stated that its provisions "concerning the admission and exclusion of evidence at trial are subject to modification in the presiding trial judge's discretion based upon the facts then before the [c]ourt." By its own terms, then, that order is not the controlling ruling on appeal. The trial court's ruling is the one we review.

And the trial court did revisit and rule on these issues at trial. Defendant's brief mostly ignores the extensive arguments below. It also ignores the trial court's rulings on both the expert witness issues[2] and the testimony Defendant could give after previously invoking the Fifth Amendment. Nor does Defendant point us to where in the transcript he proffered the evidence he now presses on appeal: his proposed testimony on the horse's *value*. He proffered lengthy *voir dire* testimony about the events of that day, but never that. In any event, the trial court did not abuse its discretion in limiting Defendant's testimony.

For these reasons, I concur only in the result. And I again discourage any future citation of this opinion under Rule 30(e)(3) of our Appellate Rules.

---

[2] Defendant sought to present evidence from four expert witnesses. But three were absent or unavailable to testify, and he had failed to properly supplement his discovery responses for all of them.

2